UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| HOUSING OPPORTUNITIES MADE EQUAL OF VIRGINIA, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 3:16-cv-00218 |
| HISTORIC HOUSING, L.L.C., et al., | ) ) | |
| Defendants. | ) ) ) | |

## JOINT MOTION FOR ENTRY OF PROPOSED CONSENT ORDER

Plaintiff Housing Opportunities Made Equal of Virginia ("HOME"), ("Plaintiff") and

Defendants, Historic Housing L.L.C., Bacon Housing SCP L.P., Canal Walk Lofts IV L.P., SWA

Architects-VA, Inc., and SWA Construction Inc. (collectively, "Defendants"), (jointly,

"parties"), by and through their undersigned counsel, hereby notify the Court that a Consent

Order resolving the claims brought by Plaintiff against Defendants was agreed upon by the

parties, and hereby move the court for final approval and entry of the attached Proposed Consent

Order. In support thereof, the parties state as follows:

1.       On April 15, 2016, Plaintiff filed a Complaint in this Court seeking declaratory

and injunctive relief as well as damages and attorneys' fees (ECF No. 1).

2.       The parties and their counsel have had several meetings regarding settlement of

Plaintiff's claims. All parties have now agreed to the terms of a Consent Order to be entered by

this Court. The Proposed Consent Order is attached as Exhibit 1.

3.       The parties believe that this is a fair and reasonable resolution of Plaintiff's

claims.

WHEREFORE, these parties jointly request that this Court approve and enter the attached Proposed Consent Order.

Date: January 4, 2017

Respectfully Submitted,

_____/s/_____.

Michael G. Allen (VSB No. 25144)
Laura J. Gaztambide-Arandes, admitted *pro hac vice*
Reiman, Dane & Colfax PLLC
1225 - 19th Street, N.W., Suite 600
Washington, DC 20036
Telephone: 202. 728.1888
Facsimile: 202. 728.0848
Email: *mallen@relmanlaw.com*
       *sdane@relmanlaw.com*
       *larandes@relmanlaw.com*

_____/s/_____.

Tim Schulte (VSB No. 41881)
Shelley Cupp Schulte, P.C.
2020 Monument Avenue
Richmond, Virginia 23220
Telephone: 804.644.9700
Facsimile: 804.278.9634
Email: *Schulte@scs-work.com*
*Attorneys for Plaintiff*

_____/s/_____.

Thomas M. Wolf (VSB No. 18234)
LeClairRyan, A Professional Corporation
919 East Main Street, 24th Floor (23219)
Post Office Box 2499
Richmond, Virginia 23218
Telephone: 804.916.7143
Facsimile: 804.916.7243
Email: *Thomas.wolf@leclairryan.com*
*Counsel for Historic Housing L.L.C., Bacon*
*Housing SCP L.P., Canal Walk Lofts JV L.P.,*
       *and SWA Construction, Inc.*

2

_____/s/_____.
Stephan F. Andrews (VSB No. 23756)
Ashley G. Moss (VSB No. 82448)
Vandeventer Black LLP
707 East Main Street, Suite 1700
Post Office Box 1558
Richmond, Virginia 23218
Telephone: 804.237.8800
Facsimile: 804.237.8801
Email: *sandrews@vanblacklaw.com*
        *amoss@vanblacklaw.com*
*Counsel for SWA Architects-VA, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on January 4, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to the following:

Michael G. Allen (VSB No. 25144)
Laura J. Gaztambide-Arandes, admitted *pro hac vice*
Reiman, Dane & Colfax PLLC
1225 - 19th Street, N.W., Suite 600
Washington, DC 20036
Telephone: 202. 728.1888
Facsimile: 202. 728.0848
Email: *mallen@relmanlaw.com*
        *sdane@relmanlaw.com*
        *larandes@relmanlaw.com*

Tim Schulte (VSB No. 41881)
Shelley Cupp Schulte, P.C.
2020 Monument Avenue
Richmond, Virginia 23220
Telephone: 804.644.9700
Facsimile: 804.278.9634
Email: *Schulte@scs-work.com*
*Attorneys for Plaintiff*


Stephan F. Andrews, Esq.
Ashley G. Moss, Esq.
VANDEVENTER BLACK LLP
707 East Main Street, Suite 1700
P.O. Box 1558
Richmond, Virginia 23218
(804) 237-8800
(804) 237-8801 (facsimile)
sandrews@vanblacklaw.com
amoss@vanblacklaw.com
*Attorneys for SWA Architects-VA, Inc.*


                                    /s/
                        _____.
                        Thomas M. Wolf


4

# EXHIBIT 1

### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

| | | |
|---|---|---|
| HOUSING OPPORTUNITIES MADE EQUAL OF VIRGINIA, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 3:16-cv-00218 |
| HISTORIC HOUSING L.L.C., BACON HOUSING SCP L.P., CANAL WALK LOFTS IV L.P., SWA ARCHITECTS-VA, INC., AND SWA CONSTRUCTION INC., | ) ) ) ) ) | **[PROPOSED] CONSENT ORDER** |
| Defendants. | ) ) | |

This Consent Order is submitted jointly by the parties for approval and entry by the Court to resolve the claims by Plaintiff Housing Opportunities Made Equal of Virginia ("HOME") against Historic Housing L.L.C., Bacon Housing SCP L.P., Canal Walk Lofts IV L.P., SWA Architects-VA, Inc., and SWA Construction Inc. (collectively, "Defendants") alleging violations of the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601-3619.

### I. BACKGROUND

Defendants buy, sell, design, build, and/or manage multifamily residential properties including, for example, The Lofts at River's Fall ("The Lofts"), an apartment complex located at 1810 East Cary Street, Richmond, Virginia 23223. HOME identified what it perceived to be deficiencies in several features of the complex where it lacked the required elements of accessible and adaptable design and contained other allegedly noncompliant features.

Defendants report that they can show they were already in the process of developing remedies to the perceived deficiencies.

On April 15, 2016, HOME filed a Complaint against the Defendants. HOME alleged that the Defendants failed to design The Lofts such that (a) the public and common use areas are readily accessible to and usable by people with disabilities; (b) all covered units contain the following features of adaptive design: (i) an accessible route into and through the dwelling; (ii) usable kitchen and bathrooms such that a person in a wheelchair can maneuver about the space; and (iii) doors within units that are sufficiently wide for wheelchair passage. Based on the Defendants' alleged violations, HOME asserted that they (a) discriminated in the rental of, or otherwise made unavailable or denied, dwellings to persons because of their disabilities in violation of 42 U.S.C. § 3604(f)(1); (b) discriminated against persons because of their disabilities in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection with the rental of a dwelling, in violation of 42 U.S.C. § 3604(f)(2); and (c) failed to design and construct dwellings in compliance with the requirements mandated by 42 U.S.C. § 3604(f)(3)(C) and the applicable regulation, 24 C.F.R. § 100.205 (2008)..

## II. TERMS OF THE CONSENT ORDER

**A.     Jurisdiction and Scope of the Consent Order**

1.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1332, and 42 U.S.C. §§ 3613(a).

2.     The provisions of this Consent Order shall be binding upon Plaintiff and Defendants.

3.     The provisions of this Consent Order are effective immediately upon its approval by the Court.

2

4.     Entry of this Consent Order is in the public interest.

5.     Plaintiff asserts that it is acting as a private attorney general in bringing this action and enforcing the FHAA against the Defendants.

6.     In making the findings herein and implementing the injunctive and other relief herein, the Court has considered, *inter alia*, the following:

a.     The FHAA authorizes the Court to "grant as relief, as the court deems appropriate, any permanent or temporary injunction, temporary restraining order, or other order (including an order enjoining the defendant from engaging in such practice or ordering such affirmative action as may be appropriate)." 42 U.S.C. § 3613(c)(1).

b.     In determining appropriate relief, the Court must be flexible and the Court recognizes that "[e]quitable remedies are a special blend of what is necessary, what is fair, and what is workable. Traditionally, equity has been characterized by a practical flexibility in shaping its remedies and by a facility for adjusting and reconciling public and private needs." *Baltimore Neighborhoods, Inc. v. LOB Inc.*, 92 F. Supp. 2d 456, 468 (D. Md. 2000). Moreover, "[t]he principal limitation on the court's equitable powers is that the relief should be no broader and no more burdensome than necessary to provide complete relief to the plaintiff." *Id.* at 468.

c.     In an FHAA design and construction case such as this lawsuit, equitable remedies may include retrofitting of alleged noncompliant "covered multifamily dwellings" in conjunction with a monetary payment to the Plaintiffs which will be used to further accessible housing throughout the United States. Such a monetary payment reflects the sometimes inherent inability of a defendant to fully retrofit

3

an existing property to ensure complete technical compliance with the design and construction requirements of the FHAA.

d.      The measures set forth in this Consent Order are practical and fairly address both public and private needs for accessible housing while recognizing site conditions of the subject property.

e.      The relief contained in this Consent Order including, but not limited to, the agreed upon retrofits to the Subject Property and the monetary payments made by Defendants, makes it clear that "(1) it can be said with assurance that 'there is no reasonable expectation . . .' that the alleged violation will recur . . . and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Jones v. Poindexter*, 903 F.2d 1006, 1009 (4th Cir. 1990) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)).

7.      This Court shall retain jurisdiction to enforce compliance with this agreement.

B.      Corrective Action At the Subject Property

The Parties have agreed to certain modifications, the terms of which are incorporated herein in Exhibit A and are enforceable as part of this Consent Order.

1.      *Alterations at the Subject Property*. Defendants will perform all alterations in common or public use areas at the Subject Property within one year or as specified in Exhibit A, whichever is shorter. Defendants will perform all alterations in dwelling units at the Subject Property within eighteen months or as specified in Exhibit A, whichever is shorter.

2.      *Cost of Alterations*. Defendants agree to pay the costs of any alterations agreed to at the Subject Property and shall attempt, in good faith, to minimize any inconvenience to the residents of the apartments in performing those alterations.

4

3.     *Timetable for Performing Alterations at the Subject Property.* Defendants will ensure that all alterations at the Subject Property are completed as set forth in Exhibit A.

4.     *Notice to Residents of Availability of Alterations.* Defendants will send notice to each current resident of a dwelling unit at the Subject Property regarding the availability of certain retrofits and modifications in accordance with Exhibit A. Such notice will inform the resident the alterations will be made without cost to the resident. Upon such a request, Defendants will complete the alterations relating to the interior of that resident's covered unit within thirty (30) days after Defendants' receipt of the request. Notice will be made to future residents in accordance with Exhibit A.

5.     *Inspection of Alterations Performed.*

i.     Defendants agree to inform the Plaintiff in writing of the completion of the agreed upon alterations at the Subject Property within thirty (30) days of the completion of such alterations. Plaintiff, if they choose, at their own cost may conduct an on-site inspection at the Subject Property within a reasonable time period after receipt of each such notice. Any inspection shall be of a sample to be determined by the Plaintiff to determine if the alterations have been performed according to the terms of this Consent Order.

ii.     If an inspection by Plaintiff indicates that any of the required alterations have not been made as specified herein, it shall inform Defendants of the deficiencies. Defendants agree to correct any deficiencies noted by Plaintiff within thirty (30) days of that notice or the time allowed by the original timeline, whichever is later, and provide documentary and photographic evidence of the correction of such alterations.

6.      *Sale or Transfer of an Ownership Interest In The Subject Property.*

The issuance of a certificate of occupancy, or the sale or transfer, in whole or in part, of

an ownership interest in the Subject Property by Defendants after the entry of this Consent Order

shall not affect Defendants' obligation to complete the alterations at the Subject Property agreed

to under this Consent Order. Should Defendants decide to sell or transfer any ownership interest

in the Subject Property prior to the completion of the alterations provided for under this Consent

Order, Defendants will provide written notice to each buyer or transferee that Defendants are

required to complete the alterations pursuant to this Consent Order. Defendants shall either

complete the alterations prior to the sale or transfer of the Subject Property or obtain written

consent of the new buyer(s)/transferee(s) to have these alterations performed within the time

frame allotted herein at the Subject Property after the new owner takes possession of the Subject

Property. Not later than fourteen (14) days after such sale or transfer, Defendants agree to notify

Plaintiff in writing of actions that Defendants have taken in accord with this provision.

C.      Settlement Payment

Defendants agree to make a Settlement Payment to Plaintiffs in the amount of $50,000 as

compensation to Plaintiff, including attorneys' fees, costs, and litigation expenses, prior to

December 31, 2016. Payment will be made by check payable to Relman, Dane & Colfax PLLC,

1225 19th St. NW, Suite 600, Washington, DC 20036.

D.      General Release of All Claims

1. In exchange for, and in consideration of, the payments, alterations, benefits, and other

commitments described herein, Plaintiff hereby fully releases, acquits, and forever discharges

Defendants and each of their predecessors, successors and assigns, parent corporations, subsidiary

corporations, affiliated corporations, and the officers, directors, shareholders, partners, employees,

6

managers, members, representatives, insurers, attorneys and agents, past and present, from any and all claims, liabilities, causes of action, damages, costs, attorneys' fees, expenses, and compensation whatsoever, of whatever kind or nature, in law, equity or otherwise, whether known or unknown, vested or contingent, suspected or unsuspected, that Plaintiff may now have, have ever had, or hereafter may have relating to the Subject Property and the allegations in the Lawsuit, and hereby specifically waive and release all such claims, including, but not limited to, those arising under the FHAA and any and all state or local statutes, ordinances, or regulations governing the accessibility of residential units and common areas including, without limitation, any state law claim pursuant to the laws of the Commonwealth of Virginia, as well as all claims arising under federal, state, or local law involving any claim related to the allegations in the Lawsuit. Similarly, Defendants shall fully release, acquit, and forever discharge Plaintiff from any and all claims, liabilities, causes of action, damages, costs, attorneys' fees, expenses, and compensation whatsoever, of whatever kind or nature, in law, equity or otherwise, whether known or unknown, vested or contingent, suspected or unsuspected, that Defendants may now have, have ever had, or hereafter may have relating to the Subject Property and the allegations in the Lawsuit, and hereby specifically waive and release all such claims.

      2.      Plaintiff agrees that the entry of this Consent Order shall extinguish all claims and shall be a full, complete, and final disposition and settlement of all claims against Defendants relating to the Subject Property and all matters and issues which were alleged, or could have been alleged, were raised, or could have been raised, in any other manner related to the Subject Property, including, but not limited to, claims relating to the FHAA and any similar federal, state, or local law. Accordingly, Plaintiff stipulates and agrees that res judicata and collateral estoppel apply to each of the claims relating to the Subject Property in this Lawsuit so that Plaintiff is forever barred

from re-litigating such claims, matters, and issues which were alleged, or could have been alleged, or could have been raised, in any other manner related to the Subject Property including, but not limited to, claims relating to the FHAA and any similar federal, state, or local law.

E.     Miscellaneous Provisions

1.     *Deadlines*. All deadlines and dates for performance by Plaintiff and/or Defendants under this Consent Order may be extended or modified by written agreement between Plaintiff and Defendants.

2.     *Notice to the Parties*. All notices required or permitted hereunder shall be in writing and shall be served on the Parties at the addresses or e-mail addresses set forth below. If sent by overnight delivery, notice shall be deemed delivered one (1) business day after deposit with the nationally recognized overnight courier. Personal delivery shall be deemed delivered upon the date the same was actually delivered. E-mail notices shall be deemed delivered the day the same was sent, provided that the sender has retained a copy and the same was properly sent.

i.     Notices to the Plaintiff shall be sent to: Heather Crislip, Housing Opportunities Made Equal of Virginia, 626 E. Broad St., Suite 400, Richmond, VA 23219, with a copy to Laura Arandes at Relman, Dane & Colfax, PLLC, 1225 19th St. NW, Suite 600, Washington, DC 20036.

ii.     Notices to the Defendants shall be sent to: Stephan "Hobie" F. Andrews and Ashley G. Moss at Vandeventer Black LLP, 707 East Main Street, Suite 1700, Post Office Box 1558, Richmond, Virginia 23218 and Thomas M. Wolf at LeClairRyan, 919 East Main Street, 24th Floor, Post Office Box 2499, Richmond, Virginia 23218.

## III. ORDER

SO ORDERED this _____ day of _____, 2016.

_____
UNITED STATES DISTRICT COURT JUDGE

Agreed to by the Parties as indicated by the signatures appearing below:

**Plaintiff Housing Opportunities Made Equal of Virginia**

By: _____   December 30 2016

Name: ___HEATHER MULLINS CRISLIP___

Its: ___PRESIDENT & CEO___

**Historic Housing L.L.C.**

By: _____ December ~~October~~ 30 2016

Name: H. LOUIS SALOMONSKY

Its: MANAGER

**Bacon Housing SCP L.P.**

By: _____ December 30, 2016

Name: H. LOUIS SALOMONSKY

Its: MANAGER of MANAGER of ITS G.P.

**Canal Walk Lofts IV L.P.**

By: _____ December 30, 2016

Name: H. LOUIS SALOMONSKY

Its: MANAGER OF MANAGER OF ITS G.P.

**SWA Construction Inc.**

By: _____ December 30 2016

Name: STEPHEN D. SALOMONSKY

Its: VICE PRESIDENT OF OPERATIONS

SWA Architects VA, Inc.

By: _____ December 30, 2016

Name: H. Louis Skomonsky

Its: Vice President

APPROVED AS TO FORM:

Michael G. Allen, Esq. (VA Bar No. 25141)
Stephen M. Dane, Esq.
Laura J. Gaztambide-Arandes, Esq., *pro hac vice*
RELMAN, DANE & COLFAX PLLC
1225 19th Street, N.W., Suite 600
Washington, D.C. 20036
(202) 728-1888
(202) 728-0848 (facsimile)
mallen@relmanlaw.com
sdane@relmanlaw.com
larandes@relmanlaw.com

Stephan F. Andrews, Esq. (VA Bar No. 23756)
Ashley G. Moss, Esq.  (VA Bar No. 82448)
VANDEVENTER BLACK LLP
707 East Main Street, Suite 1700
P.O. Box 1558
Richmond, Virginia 23218
(804) 237-8800
(804) 237-8801 (facsimile)
sandrews@vanblacklaw.com
amoss@vanblacklaw.com

*Attorneys for SWA Architects-VA, Inc.*

Tim Schulte, Esq. (VA Bar No. 41881)
SHELLEY CUPP SCHULTE, P.C.
2020 Monument Avenue
Richmond, VA 23220-2733
(804) 644-9700
(804) 278-9634 (facsimile)
schulte@scs-work.com

*Attorneys for Plaintiff*

Thomas M. Wolf, Esq. (VA Bar No. 18234)
LECLAIRRYAN
919 East Main Street
Richmond, VA 23219
(804) 916-7143
(804) 916-7243 (facsimile)
thomas.wolf@leclairryan.com

*Attorney for Historic Housing L.L.C., Bacon Housing SCP L.P., Canal Walk Lofts IV L.P., and SWA Construction Inc.*

13

APPROVED AS TO FORM:

Michael G. Allen, Esq. (VA Bar No. 25141)
Stephen M. Dane, Esq.
Laura J. Gaztambide-Arandes, Esq., *pro hac vice*
RELMAN, DANE & COLFAX PLLC
1225 19th Street, N.W., Suite 600
Washington, D.C. 20036
(202) 728-1888
(202) 728-0848 (facsimile)
mallen@relmanlaw.com
sdane@relmanlaw.com
larandes@relmanlaw.com

Tim Schulte, Esq. (VA Bar No. 41881)
SHELLEY CUPP SCHULTE, P.C.
2020 Monument Avenue
Richmond, VA 23220-2733
(804) 644-9700
(804) 278-9634 (facsimile)
schulte@scs-work.com

*Attorneys for Plaintiff*

Stephan F. Andrews, Esq. (VA Bar No. 23756)
Ashley G. Moss, Esq.  (VA Bar No. 82448)
VANDEVENTER BLACK LLP
707 East Main Street, Suite 1700
P.O. Box 1558
Richmond, Virginia 23218
(804) 237-8800
(804) 237-8801 (facsimile)
sandrews@vanblacklaw.com
amoss@vanblacklaw.com

*Attorneys for SWA Architects-VA, Inc.*

Thomas M. Wolf, Esq. (VA Bar No. 18234)
LECLAIRRYAN
919 East Main Street
Richmond, VA 23219
(804) 916-7143
(804) 916-7243 (facsimile)
thomas.wolf@leclairryan.com

*Attorney for Historic Housing L.L.C., Bacon Housing SCP L.P., Canal Walk Lofts IV L.P., and SWA Construction Inc.*

13

APPROVED AS TO FORM:

Michael G. Allen, Esq. (VA Bar No. 25141)
Stephen M. Dane, Esq.
Laura J. Gaztambide-Arandes, Esq., *pro hac vice*
RELMAN, DANE & COLFAX PLLC
1225 19th Street, N.W., Suite 600
Washington, D.C. 20036
(202) 728-1888
(202) 728-0848 (facsimile)
mallen@relmanlaw.com
sdane@relmanlaw.com
larandes@relmanlaw.com


Tim Schulte, Esq. (VA Bar No. 41881)
SHELLEY CUPP SCHULTE, P.C.
2020 Monument Avenue
Richmond, VA 23220-2733
(804) 644-9700
(804) 278-9634 (facsimile)
schulte@scs-work.com

*Attorneys for Plaintiff*

Stephen F. Andrews, Esq. (VA Bar No. 23756)
Ashley G. Moss, Esq. (VA Bar No. 82448)
VANDEVENTER BLACK LLP
707 East Main Street, Suite 1700
P.O. Box 1558
Richmond, Virginia 23218
(804) 237-8800
(804) 237-8801 (facsimile)
sandrews@vanblacklaw.com
amoss@vanblacklaw.com

*Attorneys for SWA Architects-VA, Inc.*

Thomas M. Wolf, Esq. (VA Bar No. 18234)
LECLAIRRYAN
919 East Main Street
Richmond, VA 23219
(804) 916-7143
(804) 916-7243 (facsimile)
thomas.wolf@leclairryan.com

*Attorney for Historic Housing L.L.C., Bacon Housing SCP L.P., Canal Walk Lofts IV L.P., and SWA Construction Inc.*

13

# EXHIBIT

# A

A. <u>Leasing Office</u>

1.      Within six months of the Court's entry of this Order, Defendants will construct a new leasing office at 1817 East Main Street, which will service potential residents at the Lofts, and will be compliant with the Americans with Disabilities Act and accessible to the public.

B. <u>Exterior Routes</u>

1.      Defendants will grind the entrance walkway to reduce the current ¾" change in level to ¼" or less.

2.      Defendants will place a cane detectable warning beneath the exterior intercom.

C. <u>Common Use Spaces</u>

1.      Defendants will provide and implement plans to ensure that the mailboxes for Type A Units are between 24" and 48" above finished floor ("AFF"); and that mailboxes between 24" and 48" AFF are available on demand to residents who request them. Defendants will provide notice of this accommodation to all current residents, and will reference this accommodation in their future lease agreements. Defendants will also place a cane detectable warning, such as a potted plant, beneath the rent box in the common area.

2.      Defendants will remove the coffee station in the lobby or replace it with compliant equipment.

3.      In the Pavilion kitchen area, Defendants will reconfigure cabinets to allow a compliant forward approach. Defendants will also remove or relocate the microwave to a compliant location, lower electrical outlets so that one or more is

less than 46" AFF, and relocate the thermostat so that it is less than 48" AFF and affords the required clear floor space

4.     In the Pavilion lounge area, Defendants will replace at least one of the thresholds from the lounge to the patio/pool area so that it is less than ½" AFF and beveled and within compliance for operable force. Windows will also be fixed to prevent issues with the accessibility of window controls.

5.     Defendants will lock the control box for the fire pit on the exterior patio.

6.     Defendants will place cane detectable objects beneath exterior lights, the vent, and the fire pit control box on the exterior patio surrounding the pool area.

7.     Defendants will install a compliant sign for the men's toilet room near the Pavilion, relocate the trashcan outside of the clear floor space, and relocate the grab bar to ensure that it is less than 12" from the rear wall.

8.     Defendants will install a compliant sign for the women's toilet room near the Pavilion, relocate the trashcan outside of the clear floor space, lower the towel dispenser, and provide surface-mounted blocking behind grab bars to locate them at the proper distance from the toilet fixture. Defendants will also adjust the wall framing to allow at least 56" clearance for the toilet.

9.     In the third floor corridor, Defendants will reduce the thickness of current wainscoting such that a 36" route is provided. Defendants will also replace the threshold to the common use balcony so that it is equal to or less than ½" AFF and remove the coffee station in the third floor corridor area or replace it with compliant equipment.

2

10.   Defendants will provide an automatic door to the patio near room 111 with controls located within 48" AFF.

11.   Defendants will engage a third party to test door force and ensure compliance with the applicable allowances.

12.   Defendants will lock the control box for the fire pit on the exterior patio.

D.   Tenant Storage

1.   Defendants will redesign the tenant storage area to provide two dedicated accessible storage areas, include ANSI A-117 compliant hardware on the two dedicated spaces and doors with compliant widths.

E.   Electrical

1.   All environmental controls will be adjusted to a height less than 54" AFF.

2.   Defendants will adjust and, if necessary, add electric outlets to ensure that at least one outlet is accessible in each room of each dwelling unit.

3.   Defendants will adjust light switches so that they are mounted at no more than 50" AFF.

F.   Bathrooms/Powder Rooms

1.   In all units other than Type 4 units,[1] Defendants will implement new designs which provide the required clear floor space in bathrooms +/- 2 inches for baseboards.

2.   In units with only an entry landing on the level served by the elevator (Type 11, 12, 14, 14a, and 15), Defendants will add or otherwise combine spaces to provide an accessible powder room on the level served by the elevator.

---

[1] All Apartment Unit numbers corresponding to Unit Types are listed at the end of this Exhibit.

3

3.     Upon request from a tenant, Defendants will remove or replace wall cabinetry behind toilets and install grab bars. Defendants will provide notice of this accommodation to all current residents, and will reference this accommodation in their future lease agreements.

4.     Defendants will insulate all exposed lavatory pipes at lavatories offering a forward approach.

5.     For Type 1 and Type 9 units, defendants will raise the vanity apron at the lavatory to allow at least 27" knee space and to provide the required clear floor space and will insulate all pipes.

6.     For Type 2, Type 5, Type 6, Type 17, Type 20, and Type 21 units, defendants will install a 20" deep vanity top with the lavatory located in the center, providing a compliant centered parallel approach, or will provide a pedestal sink with proper clearance.

7.     For Type 6 units, defendants will reposition toilets if allowed by current structural members to be within 18" of one wall or may provide a grab bar attached to the back wall that will swing down.

8.     In Type 13 and Type 13A units, defendants will install removable base cabinets beneath lavatories and will install 36" wide doors with ADA-compliant thresholds for entry into the bathrooms.

9.     All toilet centerlines shall be between 16" and 18" from an adjacent wall.

G.  Kitchens

    1.      Defendants will implement new designs to ensure that cabinetry and counters are placed such that required clear floor space, centered on the range, is provided in every dwelling unit.

H.  Doors/Accessible Routes within Units

    1.      For Type 2 units, Defendants will fixate, permanently lock, and prevent the use of balconies with doors with less than 32" nominal clear width and balcony thresholds greater than ½" AFF.

    2.      For Type 6 units, Defendants will widen the passage near the stairs by relocating the wall to provide an accessible route with a width of at least 36".

    3.      For Type 17 units, Defendants will install new interior doors that have a nominal clear width of at least 32".

    4.      For Type 17, Type 19, Type 22, and Type 26 units, Defendants will install entry doors that have a clear opening width of at least 32".

    5.      Upon request from a tenant, Defendants will change any pocket door hardware in a unit if needed for accessibility reasons. Defendants will provide notice of this accommodation to all current residents, and will reference this accommodation in their future lease agreements.

I.  Garage

    1.      In the dedicated accessible parking spaces in the lower garage, Defendants will ensure that parking signage is located at the head of accessible parking spaces and will adjust the layout of the spaces to allow a 96" width.

2. In the dedicated accessible parking spaces in the middle garage, Defendants will ensure that parking signage is located at the head of the accessible parking spaces.

3. Defendants will remove the charging station in the garage.

J. Unit Types

1. Defendants will ensure that redesigned Units UG02, MG12, MG13, 101, 103, 104, 114, 115, 116, 125, 126, 127, 140, 141, 142, 149, 150, 155, 156, 202, 203, 214, 215, 216, 225, 226, 227, 240, 241, 242, 255, 256 (although some of the units may be combined with other units as part of the remediation), comply with the specifications set forth in sections E to H above, as applicable.

2. The Unit Types referenced above are as defined below:

| Unit Type | Unit Numbers |
|---|---|
| Type 1 | 103-106, 112-113, 117-124, 128-129, 135-138, 143-148, 151-155, 203-206, 212-213, 217-224, 228-229, 235-238, 243-255 |
| Type 1a | 150 |
| Type 2 | 111, 130, 211, 230 |
| Type 3 | 109-110, 131-132, 209-210, 231-232 |
| Type 4 | 108, 133, 208, 233 |
| Type 5 | 107, 134, 207, 234 |
| Type 6 | 139, 239 |
| Type 7 | 142, 242 |
| Type 8 | 140, 240 |
| Type 9 | 157, 257 |
| Type 10 | 101, 201 |
| Type 11 | 156, 256 |
| Type 12 | 102, 202 |
| Type 13 | 115, 215, 226 |
| Type 13A | 126 |
| Type 14 | 114, 116, 125, 127, 214, 216, 225, 227 |
| Type 15 | 149 |
| Type 17 | MG01 |
| Type 18 | MG13 |
| Type 19 | MG12 |
| Type 20 | MG11 |
| Type 21 | MG09, MG10 |

6

| Unit Type | Unit Numbers |
|-----------|--------------|
| Type 22 | MG06-MG08 |
| Type 23 | MG03-MG05 |
| Type 24 | MG02 |
| Type 25 | UG01 |
| Type 26 | MG14 |
| Type 27 | 141, 241 |
| Type 28 | UG02 |